ALLEN B. DU MONT LABORATORIES, INC., A DELAWARE CORPORATION, PLAINTIFF, v. MARCALUS MANUFACTURING CO., INC., A NEW JERSEY CORPORATION, DEFENDANT-RESPONDENT, AND FRANKLIN G. FLOETE, ADMINISTRATOR OF GENERAL SERVICES, ORDERED ADDED AS A PARTY DEFENDANT AS TRANSFEREE OF THE RECONSTRUCTION FINANCE CORPORATION, DEFENDANT-APPELLANT.

Argued May 18, 1959—Decided June 30, 1959.

292

*Mr. Harold S. Harrison,* of the California Bar, argued the cause for defendant appellant (*Messrs. Perry W. Morton,* Assistant Attorney General; *Chester A. Weidenburner,* United States Attorney, Newark, New Jersey; *Roger P. Marquis* and *Harold S. Harrison,* attorneys, Department of Justice).

*Mr. James A. Hession* argued the cause for defendant-respondent (*Messrs. O'Mara, Schumann, Davis & Lynch,* attorneys; *Messrs. Frederic W. Schumann* and *James A. Hession,* of counsel).

*Mr. James R. E. Ozias* argued the cause for plaintiff as *amicus curiae* (*Messrs. McCarter & English,* attorneys; *Mr. James R. E. Ozias,* of counsel).

The opinion of the court was delivered by

WEINTRAUB, C. J. Defendant, Marcalus Manufacturing Co., Inc., filed a counterclaim in which it included as a

party defendant the Reconstruction Finance Corporation (hereafter R. F. C.), a wholly-owned corporation of the United States. Upon the thesis that the counterclaim was *in rem* or *quasi in rem*, process was served upon R. F. C. outside this State by mail pursuant to court order. R. F. C. moved to quash the service. Pending disposition of the motion, R. F. C. was dissolved, whereupon a motion to abate the action against it was made. Marcalus responded with a motion to substitute Franklin G. Floete, Administrator of General Services, an executive agency of the United States, as the alleged statutory transferee of the pertinent function of R. F. C. The Chancery Division denied the motion to quash the service and ordered the substitution of the Administrator. The Appellate Division granted the Administrator leave to appeal from the orders, and we certified the matter on our motion before the Appellate Division considered it.

The Administrator contends the counterclaim is a suit against the United States to which it has not consented. He further urges the claim is necessarily *in personam* since Marcalus seeks to reform a contract and deed between it and R. F. C., and hence there may not be constructive service of process. As we see the case, there is no need to consider the delicate question of the authority of our courts to summon the federal agency. We reach this result because, for reasons hereafter stated, we find no interest of the Government in whatever *res* may be deemed to be the subject of the action, nor any need for jurisdiction over the Government or its representative in connection with the claim for reformation. This being so, the sole consequence of a judgment against R. F. C. and the Administrator in the present case would be to bind them with respect to possible subsequent litigation *in personam*, and they may not be brought in by substituted service to that end.

Marcalus also contends that, if substituted service was improper, yet R. F. C. should be deemed to have appeared generally by reason of a stipulation between counsel ex-

tending its time to "answer or otherwise proceed herein * * *" For reasons to be stated, there was no waiver of the objection to jurisdiction.

## I.

R. F. C. owned a tract of land in the Borough of East Paterson. It conveyed to Marcalus the portion lying north of Market Street, reserving by its contract of sale and deed an easement for the benefit of the portion of the tract south of that street. Subsequently R. F. C. conveyed the southerly portion and its interest in the easement to plaintiff, Allen B. Du Mont Laboratories, Inc. Du Mont, as transferee of R. F. C., sues Marcalus to enforce the following provision in the contract of sale and deed between R. F. C. and Marcalus:

"The rights and easements herein required will expire on the 15th day of December, 1952, unless exercised by the Seller, its successors or assigns, on or before the 15th day of December, 1952. If exercised by the Seller, its successors or assigns, the Seller, its successors or assigns shall be required to pay to the Purchaser herein the sum of One Hundred Twenty Thousand Dollars ($120,000.00), such payment to apply to the cost of the following installation:

a. A spur track, to grade, to extend along the above stated easement.

b. A switch-back to be constructed from a point on the above stated spur track, such point to be on the southerly side of Market Street, and extend across Market Street to the westerly side of Building No. 41.

c. Construction of a high-level siding along the easterly side of Building No. 41 to serve that building exclusively."

Du Mont seeks to compel Marcalus to construct the facilities described in the quotation above. Marcalus insists Du Mont must install at its own cost the spur track referred to in "a," and that Marcalus is obligated to provide only items "b" and "c," toward the cost of which it is to receive the stipulated sum of $120,000. Marcalus counterclaimed to reform its contract with and the deed from R. F. C. to conform to its stated version of the agreement.

The theme is mutual mistake. For that purpose, Marcalus joined R. F. C. with Du Mont as defendant.

The counterclaim additionally seeks to quiet title against the "cloud" of the easement, apparently on the ground that Du Mont allegedly failed to exercise its rights within the stipulated time and allegedly failed to seek certain alternative routes for trackage, an effort which R. F. C. and its successor were required by the Marcalus instruments to make before asserting any right to the easement. Marcalus also joined R. F. C. as a defendant ·in the counts which thus seek to quiet title.

## II.

 An action *in rem* or *quasi in rem* may proceed upon constructive service only to the end of determining interests in the *res*. *Pennoyer v. Neff*, 95 *U. S.* 714, 24 *L. Ed.* 565 (1878); *R. R.* 4:4–5; *Wilentz v. Edwards*, 134 *N. J. Eq.* 522 (*E. & A.* 1944); *McVoy v. Baumann*, 93 *N. J. Eq.* 638 (*E. & A.* 1922); *Leek v. Wieand*, 7 *N. J. Super.* 501 (*Ch. Div.* 1950). *In personam* relief may not be founded upon process served outside the jurisdiction. Marcalus disclaims any purpose to obtain a judgment binding R. F. C. *in personam*. It contends its counterclaim to reform the terms of the easement is a proceeding *in rem* or *quasi in rem* for the reason that the easement is an interest in land. There is no dispute, however, with respect to the location or extent of the easement as such; rather, the controversy is over responsibility for the cost of the improvements to be erected upon or in connection with the easement. Thus viewed, the suit seems indistinguishable for the purposes of this appeal from any other action *in personam* to enforce contractual obligations. But if it be assumed that an interest in land is thereby implicated on the theory that the monetary obligations are integral parts of the easement, we fail to find any right of R. F. C. in that *res*. R. F. C. was the common grantor of Marcalus and Du Mont. It parted completely with its interests in the lands, the easement, and

the mentioned contractual provisions. It had no remaining right in the *res* which could be disturbed or affected by a judgment in this cause.

At the oral argument Marcalus explained that it joined R. F. C. merely to avoid a possible contention that R. F. C. is an indispensable party. Indeed, both the Administrator and Du Mont do insist that relief cannot be awarded Marcalus in the absence of the Government. If that were true, a nice question could arise as to whether that circumstance would warrant constructive service upon R. F. C. in aid of a proceeding *in rem* or *quasi in rem* notwithstanding the lack of an existing property interest in the subject matter. But we see no substance in the proposition that the presence of R. F. C. or the Administrator is essential to a disposition of the counterclaim.

There seem to be two facets to the position of the Administrator and Du Mont: (1) a judgment for reformation in this case may lead to another action *in personam* against the Government; and (2) reformation necessarily requires the presence of the original parties to the instrument because otherwise there is no way to litigate a claim that the mistake was "mutual."

As to the first, the Administrator's brief reads:

"Because of this interrelationship any purported reformation may be reflected in contract claims asserted against the United States or its agencies in terms of failure of consideration, breach of contract or warranty or in some other form."

██ Marcalus concedes, as indeed it must, that it could not bring in R. F. C. for the purpose of obtaining a judgment which would bind it *in personam*. The aftermath to which the Administrator alludes can only be a possible claim over by Du Mont if it should fail in its defense of the counterclaim. But if a judgment here should conclude the United States in such other proceeding against it, it would not be by virtue of any pretense that the judgment directly binds one who is not a party. Rather that consequence will

ensue, if at all, by reason of some collateral obligation of the government to indemnify Du Mont. If that obligation does exist, it lies with the Government to decide whether to intervene as a party or to undertake to defend the counterclaim in discharge of that obligation. That a claim against the United States may be precipitated by the result in this case no more makes it an indispensable party than does the existence of an automobile liability policy operate to require the joinder of the carrier in a suit against its insured.

 Whether a party is indispensable depends upon the circumstances of the particular case. As a general proposition, it seems accurate to say that a party is not truly indispensable unless he has an interest inevitably involved in the subject matter before the court and a judgment cannot justly be made between the litigants without either adjudging or necessarily affecting the absentee's interest. See 3 *Moore, Federal Practice* (2d ed. 1948), § 1907, *p.* 2150; *Thatcher v. Jerry O'Mahony, Inc.*, 39 *N. J. Super.* 330, 333 (*App. Div.* 1956); *Garnick v. Serewitch*, 39 *N. J. Super.* 486, 496 (*Ch. Div.* 1956); *Miracle Adhesives Corporation v. Peninsula Title Contractors' Ass'n of San Mateo, Santa Clara and San Benito Counties*, 157 *Cal. App.* 2d 591, 321 *P.* 2d 482, 483 (*D. Ct. App.* 1958); *Teaver v. Miller*, 53 *N. M.* 345, 208 *P.* 2d 156, 159 (*Sup. Ct.* 1949); *Equitable Life Assurance Society of United States v. Basnight*, 234 *N. C.* 347, 67 *S. E.* 2d 390, 394 (*Sup. Ct.* 1951). The only parties immediately interested in the issue before the court are Du Mont and Marcalus, who contend with respect to the alleged obligation of Marcalus. If the position of Marcalus is meritorious (and of course we express no view), it manifestly would be unjust to deny it a hearing because the assignor or grantor of Du Mont is beyond our jurisdiction. We see no difference between this case and the usual suit by an assignee of rights under a contract. An assignee may not claim a position stronger than the one his assignor could assert merely upon the ground that his assignor is beyond the jurisdiction of the court.

Reference is made to *De Groot v. Wright,* 9 *N. J. Eq.* 55 (*Ch.* 1852); *Thiefes v. Mason,* 36 *A.* 946 (*N. J. Ch.* 1897); and *First National Bank of Town of Union v. Fessler,* 84 *N. J. Eq.* 166 (*E. & A.* 1915). None is in point. In *De Groot* complainant sought to establish a life interest in property which his mother conveyed to his sister in exchange for her covenant to support the mother for life. He sought to achieve that result by reformation of the deed his mother delivered to his sister. He omitted to join the mother, who in fact was available for service. She had an existing interest in the matter since her conveyance was the consideration for the subsisting promise for her support. The court, which ultimately found against complainant on the facts, observed that reformation could not be ordered without the presence of the mother because she "is immediately interested * * *" (9 *N. J. Eq.,* at *page* 58). In *Thiefes* direct claimants to the property whose title was sought to be barred were omitted. In *Fessler* an effort was made to reform an existing promissory note to increase the sum payable from $33 to $3,300. The maker and an intermediate endorser were not served. Fessler, who was the last endorser and for accommodation only, objected to reformation in the absence of those who would be liable to him on the very instrument itself. The court upheld the objection, and also found as a fact that mistake had not been proved as to Fessler. In all of these cases the absent party had an existing interest in the very subject matter which would have been directly affected by the judgment.

There are a number of cases in which it was either expressly held or assumed that reformation may be sought without joining a party to the mistake where it appeared such party no longer had an interest in the subject matter of the litigation. Included are actions between grantees of a common grantor. As to common grantors, see *Davis v. Kleindienst,* 64 *Ariz.* 251, 169 *P. 2d* 78 (*Sup. Ct.* 1946); *Hargis v. Lawrence,* 135 *Ark.* 321, 204 *S. W.* 755 (*Sup. Ct.* 1918); *Hamblin v. Johnson,* 254 *S. W. 2d* 76 (*Ky. Ct. App.*

1953) (as modified on rehearing); *Flowers v. Germann,* 211 *Minn.* 412, 1 *N. W. 2d* 424 *(Sup. Ct.* 1941); *Walters v. Tucker,* 308 *S. W. 2d* 673 *(Mo. Sup. Ct.* 1957); *Grosbach v. Brown,* 72 *Wis.* 458, 40 *N. W.* 494 *(Sup. Ct.* 1888). As to other situations, see *Steadham v. Cobb,* 186 *Ga.* 30, 196 *S. E.* 730 *(Sup. Ct.* 1938); *Perkins v. Perkins,* 249 *N. C.* 152, 105 *S. E. 2d* 663 *(Sup. Ct.* 1958); *cf. Charette v. Fruchtman,* 110 *N. J. Eq.* 256, 259 *(Ch.* 1932).

The second aspect of the position taken by the Administrator and Du Mont is that reformation is impossible in the absence of an original party to the transaction because without him the mistake cannot be proved to have been mutual. The argument is that the mental operations of a party to the basic transaction cannot be explored and determined unless he is in court. We do not understand why this should be so. It is commonplace to litigate like questions in the absence of the original actor. For example, where in a suit by an assignee the defendant resists upon the ground of fraud by the assignor, the mental attitude of the assignor is determined notwithstanding his absence from the case. So the fraud of an insured may be asserted by the insurer against an assignee or beneficiary of the policy notwithstanding the non-joinder of the insured or his personal representative. *Cf. Equitable Life Assurance Society of United States v. New Horizons, Inc.,* 28 *N. J.* 307 (1958). We see nothing which necessarily differentiates a claim of mutual mistake. If reformation is sought to establish a right against another, then of course that other must be before the court; a party to the mistake need not be joined unless he has a subsisting interest that will be affected. If the objective of the reformation is merely to defeat an action, there is no need for the presence of the plaintiff's grantor or assignor. Here the purpose of Marcalus is simply to defeat a suit brought upon the agreement, or alternatively to diminish its obligation under it. In such circumstances, a claim of mutual mistake is simply a defense. *Massari v. Einsiedler,* 6 *N. J.* 303, 311 (1951). The only parties

directly interested in the controversy are Marcalus, the obligor, and Du Mont, the sole owner of the right sought to be enforced.

We noted above that R. F. C. was also made a party defendant to counts to quiet title. Marcalus makes but a passing reference in its brief to this facet of the case, and probably because reformation is the lively issue. There is no colorable basis for joining R. F. C. It parted with its interest in the *res*. It is not concerned with whether Du Mont exercised its rights within time or failed to seek the alternative routes for the trackage. If the easement was lost thereby, no interest would revive in R. F. C. Marcalus does not contend to the contrary. Rather the explanation for the joinder of R. F. C., given in an affidavit of counsel for Marcalus on the motion to substitute the Administrator, was that the interest of R. F. C. as a party to the original agreement and as common grantor "was such that it was a necessary or indispensable party, without whom full relief in the nature of reformation and quieting title could not be secured in this action." For the reasons already stated, R. F. C. is not an indispensable party.

## III.

The remaining question is whether R. F. C. waived its objection to service by virtue of the stipulation of counsel extending its time to "answer or otherwise proceed herein."

Prior to the present judicial system, such a stipulation was held to constitute a general appearance foreclosing a challenge to jurisdiction. *Onken v. Onken,* 123 *N. J. Eq.* 156 (*E. & A.* 1938). We need not review the basis or merit of that result under prior practice. Suffice it to say that our present rules of court adopt another approach.

*R. R.* 4:12–8 provides that a party "waives all defenses and objections which he does not present either by motion * * * or * * * in his answer." *R. R.* 4:12–2 permits to be raised either by answer or motion before answer

"(b) lack of jurisdiction over the person, (c) insufficiency of process, (d) insufficiency of service of process." It adds that "Special appearances are superseded." Hence R. F. C. could press the jurisdictional objection by answer or motion before answer. A stipulation extending its time "to answer or otherwise proceed herein" does not suggest a purpose to abandon an objection which under the rules can be raised by answer or motion before answer. There is no reason to impose a consequence the parties to the stipulation did not intend.

It is not helpful to think in terms of a "general" appearance as against a "special" one; indeed special appearances have been superseded. The problem is ultimately one of waiver, express or implied. An answer to the merits constitutes a "general" appearance, but under *R. R.* 4:12–2 a general appearance may be made without loss of an objection to jurisdiction of the person if the objection is included in the answer or is made by prior motion. *Swanson v. Swanson*, 8 *N. J.* 169, 181 (1951). The issue which has arisen in other cases is whether the objection is lost if a defendant, without prior assertion of the objection, seeks some judicial action on the merits. In such circumstances, a waiver of the objection has been found, not because analytically a general appearance occurred, but rather because the objection was waived either by conduct evidencing an intent to waive or by failure to press the objection timely and in the mode provided by the rules. See *Trautman v. Higbie*, 10 *N. J.* 239, 243 (1952); *Dion v. Gicking*, 43 *N. J. Super.* 507, 511 (*App. Div.* 1957); *Field v. Field*, 31 *N. J. Super.* 139, 149 (*App. Div.* 1954). The point here is that an extension of time to plead or to move is wholly consistent with retention of the objection, both in terms of the intent of the defendant and in terms of compliance with the rule that the objection be asserted by answer or a motion before the answer.

*R. R.* 4:4–6, although referred to in some of the cases, actually is not decisive of the issue. That rule provides

that a general appearance or an acceptance of service signed by the defendant or his attorney shall have the same effect as if defendant had been properly served. It provides methods whereby a defendant may voluntarily submit to the jurisdiction of a court in lieu of the service of process. It was not intended to encroach upon the area covered by the rules discussed above.

The orders denying the motion to quash service and substituting the Administrator as a party defendant are accordingly reversed.

*For reversal*—Chief Justice WEINTRAUB, and Justices BURLING, JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—7.

*For affirmance*—None.