NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1755-22

BIG SMOKE LLC,

      Plaintiff-Appellant,

v.

TOWNSHIP OF WEST MILFORD,
COUNCIL OF WEST MILFORD
TOWNSHIP, and SOULFLORA,
INC.,

      Defendants-Respondents.

_____

| APPROVED FOR PUBLICATION |
| :---: |
| **March 18, 2024** |
| APPELLATE DIVISION |

Argued on January 31, 2024 – Decided March 18, 2024

Before Judges Firko, Susswein and Vanek.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Docket No. L-3052-22.

Seth R. Tipton argued the cause for appellant (Florio Perrucci Steinhardt Cappelli Tipton & Taylor LLC, attorneys; Seth R. Tipton, Sarah K. Powell, and Wade Lawrence Dickey, of counsel and on the briefs).

Edward R. Pasternak argued the cause for respondents Township of West Milford and Council of West Milford (Dorsey & Semrau, LLC, attorneys; Fred C. Semrau, of counsel; Edward R. Pasternak, on the brief).

Eric D. Reiser argued the cause for respondent SoulFlora, Inc. (Shapiro, Croland, Reiser, Apfel & Di Iorio, LLP, attorneys; Eric D. Reiser, on the brief).

The opinion of the court was delivered by

VANEK, J.S.C. (temporarily assigned)

This appeal presents the novel issue of the circumstances under which a municipality may decline to adopt a Resolution of Support (ROS) for an applicant seeking to obtain a Class 5 Cannabis Retailer License (CRL) from the State of New Jersey Cannabis Regulatory Commission (the Commission) under N.J.S.A. 24:6I-31 to -56, the Cannabis Regulatory, Enforcement Assistance, and Marketplace Modernization Act (CREAMMA).

Plaintiff Big Smoke LLC filed a verified complaint (complaint) and an emergent order to show cause (the OTSC) after defendants, the Township of West Milford and the Council of West Milford Township (collectively, the Township), effectively denied plaintiff's request for a ROS by not placing it on a public meeting agenda. The Township maintains that the de facto denial of plaintiff's request for a ROS was not arbitrary, capricious or unreasonable since supporting plaintiff's proposed business location would violate the Township's ordinance requiring licensed cannabis retailers to be not less than 2,500 feet from each other. Plaintiff sought temporary and preliminary injunctive relief to prevent defendant SoulFlora, Inc. (SoulFlora) from

establishing a cannabis business; enjoining the Township from issuing a ROS to any other new cannabis business applicants; revoking SoulFlora's ROS; and requesting attorneys' fees and costs. The Commission was not named as a defendant in the lawsuit.

Plaintiff appeals from two January 6, 2023 Law Division orders denying plaintiff's OTSC and dismissing its complaint with prejudice as to both SoulFlora and the Township. Based on a careful review of the record and the applicable law, we affirm the trial court's denial of plaintiff's OTSC and dismissal of plaintiff's complaint against SoulFlora with prejudice. We vacate the January 6, 2023 order dismissing the claims against the Township with prejudice and order a limited remand to the trial court to issue a statement of reasons pursuant to Rule 1:7-4(a), with an accompanying order.

I.

On May 31, 2019, SoulFlora's majority shareholders formed Demeter Investment Group (Demeter) in order to apply to the Commission for a CRL. On June 9, 2021, the Township adopted a ROS for Demeter's CRL application to the Commission.

On July 14, 2021, the Township adopted a series of ordinances addressing the sale and use of cannabis to further the Township's goal "[t]o protect the public health, safety, and general welfare of the residents of the

Township . . . by establishing strict limits and regulations on the lawful sale and use of legal cannabis" and "[t]o establish regulations on the time, location and manner of licensed cannabis establishments and activities." West Milford, N.J., Ordinance 2021-029 (July 14, 2021); West Milford, N.J., Code § 500-196(1) and (4).

In September 2021, the Commission informed Demeter that a CRL could not be issued under a "doing business as" designation. The shareholders began the process of incorporating SoulFlora. On September 30, 2021, the Township issued a conditional zoning permit to Demeter for property located on Route 23, designated as Block 14605, Lot 4.04 (the SoulFlora Property) in Newfoundland, an unincorporated community located within West Milford, subject to "planning board and site plan approval," as well as any applicable building permits.

On October 20, 2021, the Township adopted a ROS for SoulFlora's CRL application to the Commission. On the same day, the Township adopted an ordinance regulating the number of local CRLs the Township could issue annually. West Milford, N.J., Ordinance 2021-036 (Oct. 20, 2021). On October 22, 2021, the Township reissued the conditional zoning permit for the SoulFlora Property to reflect the newly incorporated business entity with a

4

notation that the permit was initially issued for the location on September 30, 2021.

On December 9, 2021, the Township issued a zoning permit to plaintiff setting forth that the proposed retail cannabis sale use on Block 14605, Lot 2 on Route 23 in Newfoundland (the Big Smoke property) was permitted under the Township's then-governing zoning ordinance, subject to conditions including obtaining site plan approval from the planning board and a conditional use permit.

On April 6, 2022, the Township adopted Ordinance No. 2022-015 (the Buffer Ordinance), which requires licensed cannabis retail businesses to be located no less than 2,500 feet away from each other. West Milford, N.J., Code § 500-205. The distance between plaintiff's proposed location and SoulFlora's is less than 500 feet.

On October 18, 2022, plaintiff emailed the Township Administrator requesting a ROS in order to apply for a CRL from the Commission. On October 24, 2022, the Township Administrator replied by email, denying the request to place the item on the Council's agenda. On October 27, 2022, plaintiff sent a letter request for a ROS to the Mayor, with a copy to the Township Administrator, asking that the matter be added to the Council's next meeting agenda. On October 31, 2022, the Commission approved SoulFlora's

application for a CRL, allowing SoulFlora to schedule the final inspections required under CREAMMA.

On November 1, 2022, the Township issued a zoning permit for a "Class 5 Cannabis retail and supplies" establishment on the SoulFlora property as "[p]ermitted by [o]rdinance" and without conditions, setting forth an approval date of September 30, 2021. On the same date, the Township Attorney notified plaintiff by telephone that its request to the Mayor was denied, which plaintiff alleges was predicated on its proposed location violating the Buffer Ordinance. Plaintiff sent an additional letter to the Mayor and the Township Attorney dated November 1, 2022, providing additional reasons for its request for a ROS, but the record does not indicate that the Township responded.

On December 8, 2022, plaintiff filed its OTSC in the Law Division against the Township and SoulFlora, demanding:

> a. Temporary and preliminary injunctive relief enjoining SoulFlora from relying upon the [ROS] memorializ[ed] in Resolution 2021-390 pending the entry of final judgment in this matter;
>
> b. Temporary and preliminary injunctive relief enjoining the Township from proceeding with the permitting and licensing process at the municipal level for Class 5 [CRLs], including the issuance of additional [ROSs] for other Class 5 cannabis retailer applicants or State permittees;
>
> c. Revoking SoulFlora's [ROS] memorialized in Resolution 2021-390 and remanding to the

6

Township for reconsider[ation] of Big Smoke's request for a Resolution of Support;

d. Attorney's fees and costs of suit; and

e. For any other relief the [c]ourt deems just and proper.

On December 21, 2022, the trial court entered an order granting ex parte temporary restraints against defendants – enjoining SoulFlora from relying on the ROS and preventing the Township from issuing a ROS to other applicants – and setting the OTSC return date for January 5, 2023. After a hearing on December 22, 2022, the trial court dissolved the temporary restraints and entered an amended OTSC.

On December 25, 2022, the Township filed an answer and opposed the injunctive relief sought, asserting it properly exercised its ordinance-based discretion not to place plaintiff's request for a ROS on the Council's agenda and contending the de facto denial was appropriate based on the Buffer Ordinance. On December 28, 2022, SoulFlora filed opposition to the OTSC and a cross-motion to dismiss plaintiff's complaint for failure to state a claim under Rule 4:6-2(e). SoulFlora argued that it was only a necessary party to count one of plaintiff's complaint, through which plaintiff sought the remedy of injunctive relief, and there was no viable cause of action pleaded against it.

On January 3, 2023, plaintiff filed a reply brief in support of the OTSC and in opposition to the cross-motion. The following day, the Township filed a letter joining SoulFlora's cross-motion to dismiss the complaint and asserting it opposed plaintiff's request for injunctive relief.

The trial court heard argument on January 6, 2023, and rendered an oral decision denying plaintiff's request for injunctive relief and dismissing the complaint against SoulFlora and the Township. Although the trial court entertained argument from the parties as to the request to dismiss the complaint with prejudice, the trial court in its oral decision did not definitively set forth if the dismissal as to the Township was with or without prejudice.

That day, the trial court entered two orders. The first order granted SoulFlora's cross-motion to dismiss the complaint against it with prejudice. The second order dismissed plaintiff's complaint against all defendants with prejudice, denied plaintiff's request for temporary and preliminary injunctive relief, and denied plaintiff's request to vacate SoulFlora's ROS. On January 9, 2023, the trial court issued a written statement of reasons for the entry of both orders. This appeal followed.

II.

On appeal, plaintiff asserts that the Township's refusal to add its request for a ROS to the Council's meeting agenda was arbitrary, capricious and

unreasonable because it was based on an incorrect application of the Buffer Ordinance. Plaintiff argues the trial court erred in finding the ROS was not required to be added to the agenda and asserts the Buffer Ordinance did not apply since SoulFlora was not "licensed" at the time plaintiff's request for a ROS was submitted. Plaintiff additionally asserts the trial court applied the incorrect standard of review and improperly dismissed the complaint with prejudice as to SoulFlora and the Township rather than allowing plaintiff to file an amended complaint.

SoulFlora and the Township seek affirmance. We address the parties' arguments in turn.

## III.

"An OTSC may properly be utilized where a party seeks some form of emergent, temporary, interlocutory or other form of interim relief such as the preservation of the status quo pending final hearing of the cause." Solondz v. Kornmehl, 317 N.J. Super. 16, 20 (App. Div. 1998). To be afforded injunctive relief, plaintiff is required to establish each of the following factors pursuant to Crowe v. De Gioia, 90 N.J. 126, 132-34 (1982), by clear and convincing evidence, Brown v. City of Paterson, 424 N.J. Super. 176, 183 (App. Div. 2012):

> (1) relief is needed to prevent irreparable harm; (2) the applicant's claim rests on settled law and has a

9

reasonable probability of succeeding on the merits; and (3) balancing the relative hardships to the parties reveals that greater harm would occur if a stay is not granted than if it were.

[Garden State Equal. v. Dow, 216 N.J. 314, 320 (2013) (citation omitted); see Crowe, 90 N.J. at 132-34.]

The trial court's January 9, 2023 statement of reasons sets forth that plaintiff failed to establish an entitlement to preliminary injunctive relief because it did not satisfy any of the Crowe factors. Turning first to the requirement that plaintiff establish it will suffer immediate, irreparable harm by clear and convincing evidence, the trial court found plaintiff did not meet this threshold since it could mitigate its harm by requesting a ROS for a different location, more than 2,500 feet from SoulFlora. The record before the trial court also established that any harm to plaintiff could be mitigated or remedied by monetary damages.

At oral argument before this court, plaintiff posited for the first time that it is facing irreparable harm because the Township has already issued the maximum of ten local Class 5 CRLs permitted under West Milford, N.J., Code § 500-198(a)(5). Although plaintiff asserts it is unable to request a ROS for a different location, there is no factual evidence to support this argument in the record before us and, accordingly, this argument is not appropriate for us to

consider on appeal absent a motion to expand the record, which was not filed. See Scott v. Salerno, 297 N.J. Super. 437, 447 (App. Div. 1997) ("[A]ppellate courts will not consider evidence submitted on appeal that was not in the record before the trial court.").

Although failure to establish all of the Crowe factors by clear and convincing evidence typically requires denial of an OTSC, plaintiff argues there are circumstances where the court has discretion to use a less rigid approach in order to preserve the status quo. We held in Waste Management of New Jersey, Inc. v. Morris County Municipal Utilities Authority, 433 N.J. Super. 445 (App. Div. 2013):

> This less rigid approach, for example, permits injunctive relief preserving the status quo even if the claim appears doubtful when a balancing of the relative hardships substantially favors the movant, or the irreparable injury to be suffered by the movant in the absence of the injunction would be imminent and grave, or the subject matter of the suit would be impaired or destroyed.
>
> [Id. at 454 (quoting Waste Mgmt. of N.J., Inc. v. Union Cty. Utils. Auth., 399 N.J. Super. 508, 520 (App. Div. 2008)).]

Thus, we proceed to consider the third Crowe factor, balancing the relative hardships to the parties, which plaintiff argues weighs in its favor. SoulFlora's application for a CRL was approved by the Commission on October 31, 2022. Preservation of the status quo at the time of plaintiff's

11

OTSC, filed December 8, 2022, would necessarily allow SoulFlora to continue to operate as a fully licensed cannabis retailer, which it is already permitted to do.

Even if we accept plaintiff's proffer that the status quo at the time its complaint was filed was neither plaintiff nor SoulFlora were operational, the clear and convincing evidence in the record does not establish the balance of hardships weighs in favor of granting emergent relief. Plaintiff admitted that SoulFlora is not culpable and plaintiff only added it as a party because of the potential impact on SoulFlora's rights. We are unconvinced that the balance of hardships favors depriving a fully licensed business entity, with no liability alleged against it, from operating during the pendency of this litigation.

## IV.

Both the parties and the trial court focused on the second prong of Crowe: plaintiff's likelihood of success on the merits. Plaintiff asserts that it is likely to succeed on the merits of its claims against the Township since the failure to add plaintiff's request for a ROS to the agenda was arbitrary, capricious or unreasonable, and was tantamount to a denial predicated on an incorrect application of the Buffer Ordinance.

We apply a deferential standard of review. "[M]unicipal actions enjoy a presumption of validity." Bryant v. City of Atl. City, 309 N.J. Super. 596, 610

12

(App. Div. 1998). Therefore, appellate courts may only disturb a "[m]unicipal action . . . if it is arbitrary, capricious or unreasonable." Ibid.

First, we consider plaintiff's assertion that the Township improperly declined to place its request for a ROS on the Council's next public meeting agenda. The Township code sets forth the following procedure for a member of the public to request that a matter be included on the Council's public meeting agenda:

> Any member of the public, group or organization wishing to seek Council discussion or action on any item must submit a request in writing to the Office of the Township Clerk during regular business hours. The Clerk shall cause same to be provided to the Mayor, Council and Administrator when providing the agenda for the next regularly scheduled Council meeting. The Mayor and/or Administrator may cause such items to be placed on a future workshop agenda for discussion or a future regular meeting for action. Failure of the Mayor and/or Administrator to place such items on a future agenda shall be construed as a directive to forego the matter. Any Council member may, at the next meeting after receipt of such requests, seek consensus from a majority of the Council to have such matters placed on a future workshop agenda for discussion or a future regular meeting agenda for action. Failure [of] any Council member to seek such consensus shall be construed as Council's directive to forgo the matter.
>
> [West Milford, N.J., Code § 42-5(b).]

The record establishes that plaintiff asked the Township Administrator and the Mayor to place its request for a ROS on the Council's next public

A-1755-22

meeting agenda. Under the Township code, if the Mayor or Administrator declines to put a matter on the Council's agenda, the omission is "construed as a directive to forego the matter." West Milford, N.J., Code § 42-5(b). There is no evidence in the record that plaintiff pursued any other course of action to request the ROS. Nor is there any evidence proffered that the Township failed to comply with the process set forth in the Township's ordinance.

Plaintiff acknowledges the failure to add its request to the Council's agenda constituted a denial. Since there was no express denial, rather a de facto denial predicated on a failure to act, there is no articulable or identifiable municipal action for us to review beyond failing to place the item on the agenda. Nonetheless, we address the substantive arguments raised by the parties on this portion of the Crowe standard.

Accepting that the de facto denial of plaintiff's request for a ROS was premised on application of the Buffer Ordinance, we conclude, as did the trial court, plaintiff does not have a likelihood of success on its claim that the Township's failure to adopt a ROS for plaintiff's CRL application based upon its proposed geographic location was arbitrary, capricious or unreasonable. Our conclusion is predicated on well-settled New Jersey municipal law coupled with the plain language of CREAMMA itself.

14

Adopted by the Legislature in 2021, CREAMMA is far-reaching and intended to reflect "the intent of the people of New Jersey to adopt a new approach to our marijuana policies" by regulating the manufacturing, distribution, and usage of cannabis within the State. N.J.S.A. 24:6I-32(a) and -32(c). The Legislature established and empowered the Commission with "all powers necessary or proper" to execute its duties, including:

> (1) To regulate the purchase, sale, cultivation, production, manufacturing, transportation, and delivery of cannabis or cannabis items . . . .
>
> (2) To grant, refuse, suspend, revoke, cancel, or take actions otherwise limiting licenses or conditional licenses for the sale . . . of cannabis items, or other licenses in regard to cannabis items, and to permit, in the [C]ommission's discretion, the transfer of a license between persons . . . .
>
> [N.J.S.A. 24:6I-34(b).]

CREAMMA establishes that a prospective business must obtain a CRL issued by the Commission in order to operate a premises where cannabis is sold. N.J.S.A. 24:6I-42. CREAMMA's corresponding regulatory framework, N.J.A.C. 17:30-1.1 to -8.3, sets forth that a CRL applicant must submit the following to the Commission, among other documentation:

> * * *
>
> 7. Evidence of compliance with local codes and ordinances including, but not limited to:

A-1755-22

i. The distance from the closest church, synagogue, temple, or other place used exclusively for religious worship; or

ii. The distance to the closest school, playground, park, or child daycare facility;

8. Zoning approval, which shall consist of a letter or affidavit from appropriate officials of the municipality stating that the location will conform to municipal zoning requirements allowing for activities related to the operations of the proposed cannabis business, and any variances granted concerning the operation of a cannabis business;

9. Proof of local support, which shall be demonstrated by a resolution adopted by the municipality's governing body, or where the municipality has no governing body, a written letter of support from the municipality's executive;

[N.J.A.C. 17:30-7.10(b)(7)-(9).]

The requirement set forth in paragraph nine mandates "[p]roof of local support" embodied in a municipal governing body resolution. Given the relative infancy of the licensing scheme set forth in CREAMMA, there is no published decisional law that has thus far addressed municipal discretion to issue or withhold "local support" for a CRL applicant. N.J.A.C. 17:30-7.10(b)(9).

CREAMMA itself specifically empowers municipalities to regulate cannabis establishments within their borders. So long as they are "not in

conflict with the provisions of" CREAMMA, municipalities may adopt ordinances or regulations:

> (1) governing the number of cannabis establishments, distributors, or delivery services, as well as the location, manner, and times of operation of establishments and distributors, but the time of operation of delivery services shall be subject only to regulation by the [C]ommission; and
>
> (2) establishing civil penalties for violation of an ordinance or regulation governing the number of cannabis establishments, distributors, or delivery services that may operate in such municipality, or their location, manner, or the times of operations.
>
> [N.J.S.A. 24:6I-45(a).]

CREAMMA sets forth that when the Commission "receives an application for initial licensing or renewal of an existing license for any cannabis establishment" it is the duty of the Commission to "provide . . . a copy of the application to the municipality in which the establishment . . . is to be located," at which time:

> (1) . . . . The municipality shall determine whether the application complies with its local restrictions on the number of cannabis establishments . . . or their location, manner, or times of operation, and the municipality shall inform the [C]ommission whether the application complies with its local restrictions.
>
> (2) A municipality may impose a separate local licensing or endorsement requirement as a part of its restrictions on the number of cannabis establishments . . . or their location, manner, or times of operation. A

17

A-1755-22

municipality may decline to impose any local licensing or endorsement requirements, but a local jurisdiction shall notify the [C]ommission that it either approves or denies each application forwarded to it.

[N.J.S.A. 24:6I-45(c).]

We are tasked with looking first to the plain language of a given statute to derive meaning. Lozano v. Frank DeLuca Constr., 178 N.J. 513, 522 (2004). We conclude that under CREAMMA, municipalities are delegated the authority to promulgate location and density requirements for cannabis retail businesses and are statutorily vested with the right to decline approval for applicants who fail to meet those requirements. In furtherance of this express regulatory power, the Township adopted an ordinance setting forth the following goals:

(1) To protect the public health, safety, and general welfare of the residents of the Township of West Milford by establishing strict limits and regulations on the lawful sale and use of legal cannabis.

(2) To regulate the operation of licensed cannabis establishments to protect against the unlawful operation and use of cannabis and marijuana.

(3) To establish certain conditions and limitations on the number of cannabis licenses authorized to be issued within the Township of West Milford.

(4) To establish regulations on the time, location and manner of licensed cannabis establishments and activities.

18

(5) To prohibit the operation of any cannabis establishments and other cannabis marketplace activities within the Township unless strictly in conformance with state and local laws.

(6) To establish limitations on the number and types of cannabis establishment licenses and cannabis marketplace activities.

(7) To establish local regulations as to the time, location, and manner of cannabis establishments and cannabis marketplace operations and activities in accordance with state law.

[West Milford, N.J., Code § 500-196.]

The Township established a requirement that a cannabis retail business obtain a "municipal cannabis establishment license[], otherwise known as a 'local annual cannabis license'" in order to operate, with a maximum of ten Class 5 licenses to be issued annually. West Milford, N.J., Code § 500-198(a). Consistent with CREAMMA's authorization to allow local geographic regulation of cannabis businesses, on April 6, 2022, the Township adopted the Buffer Ordinance, setting forth:

A. There shall be a minimum distance of not less than 2,500 feet between licensed cannabis retail businesses.

B. Such measurement shall be obtained by measuring the nearest entrance of one location which is licensed, to the nearest entrance of the second location which seeks to be licensed.

19

C. Such measurement shall be measured on how a pedestrian would normally walk, and not in a straight line "as the crow flies."

D. As to distance prohibitions from parks and or schools and as reflected in this chapter, such distances shall be measured in the normal way that a pedestrian would normally walk from the nearest entrance, to such a park or school and not in a straight line "as the crow flies."

[West Milford, N.J., Code § 500-205.]

"Although a municipality's informal interpretation of an ordinance is entitled to deference . . . the meaning of an ordinance's language is a question of law that we review de novo." Bubis v. Kassin, 184 N.J. 612, 627 (2005) (internal citations omitted). This same standard is applied to the interpretation of a municipal law by the trial court. Dunbar Homes, Inc. v. Zoning Bd. of Adjustment, 448 N.J. Super. 583, 595 (App. Div. 2017).

The Buffer Ordinance sets forth that "[t]here shall be a minimum distance of not less than 2,500 feet between licensed cannabis retail businesses." West Milford, N.J., Code § 500-205(a) (emphasis added). It is undisputed that at the time plaintiff first requested a ROS from the Township, SoulFlora had not yet received a CRL from the Commission. Therefore, plaintiff argues, the Buffer Ordinance could not have served as the predicate reason for the denial of its request for a ROS since the ordinance only

regulates licensed businesses and SoulFlora was not licensed at the time of the request.

Although we agree the Buffer Ordinance would not have been enforceable against plaintiff for the purposes of levying penalties, we conclude that, to the extent the Township proffers this ordinance formulated the basis for the de facto denial, consideration of the ordinance's requirements as they relate to plaintiff's proposed location was not arbitrary, capricious or unreasonable. It would be consistent with the spirit of the Buffer Ordinance as well as CREAMMA for the Township to decline to publicly support a cannabis business from moving forward with the Commission's licensing process if its proposed location would be precluded as within 2,500 feet of a previously supported CRL applicant.

Even if we found the Buffer Ordinance was improperly considered as a basis for the de facto denial of plaintiff's application for a ROS, plaintiff has not shown that the Township acted arbitrarily, capriciously or unreasonably in withholding support for its CRL application. Plaintiff has not presented any legal authority establishing it was entitled to support from the Township by way of a ROS. As there are no provisions under CREAMMA, Township ordinance, or decisional law entitling a CRL applicant the right to a ROS, the

21

determination is within the discretion of the municipality so long as its actions are not arbitrary, capricious or unreasonable.

Under N.J.S.A. 40:48-2, municipalities have discretionary police powers to "make, amend, repeal and enforce such other ordinances, regulations, rules and by-laws" that "it may deem necessary and proper for the good government, order and protection of persons and property, and for the preservation of the public health, safety and welfare of the municipality and its inhabitants" so long as those adoptions are "not contrary to the laws of [New Jersey] or of the United States."  A municipality's police powers are not unbridled in nature and have been tempered through decisional law such that they cannot be exercised in an arbitrary, capricious or unreasonable manner so as to violate the standards of due process of law.  See Hudson Circle Servicenter, Inc. v. Kearny, 70 N.J. 289, 301 (1976).

To this end, we construe the application of discretion afforded to a municipality in context of the "broad 'reservoir of police power,'" Dome Realty, Inc. v. City of Paterson, 83 N.J. 212, 230 (1980) (quoting Inganamort v. Borough of Fort Lee, 62 N.J. 521, 530 (1973)), and limit the permissibility of municipal action only so that "'such action [is not] prohibited by or inconsistent with the Constitution or the other statutes.'"  Ibid. (quoting Fred v. Mayor of Old Tappan, 10 N.J. 515, 521 (1952)); see also Inganamort, 62 N.J.

at 528 (1973) (noting that "police power . . . enable[s] local government" to utilize its authority in order to "meet . . . needs of the community" via "measures tailored to the local scene").

Viewed through this lens, we are unpersuaded that there is sufficient evidence in the record to conclude the Township acted arbitrarily, capriciously or unreasonably. It is sufficient the Township was made aware of SoulFlora's pending CRL application to the Commission and declined to extend its support by way of a ROS to another similar business that would, if successfully licensed by the State, ultimately violate the Township's own Buffer Ordinance. Although plaintiff proffers the Township's ordinances lack required clarity and specificity as to the standards for adoption of a ROS, we find no statute or case law dictating a municipal ordinance must directly address every detail of a discretionary approval process in order to be valid. The de facto denial of support for plaintiff's CRL application is just one of the myriad of discretionary acts the Township can effectuate under our decisional law and the expansive police powers embedded in our jurisprudence.

V.

We turn next briefly to plaintiff's assertion that by receiving a zoning permit before SoulFlora did, plaintiff's right to establish a cannabis business in the Township vested first. Setting aside the documentation in the record

indicating SoulFlora was issued a conditional zoning permit before plaintiff, acceptance of plaintiff's argument would require us to conclude that a zoning permit confers an enforceable right. We decline to draw that conclusion.

Plaintiff offers no authority for its position. Conversely, the Township code provides guidance on the issue as follows:

> The Township Zoning Officer shall issue a zoning permit where it is determined that:
>
> (1) The structure or use is permitted in the proposed location; or
>
> (2) The structure or use exists as a nonconforming use and/or structure, or the structure is permitted under § 500-72, Nonconforming lots, structures and uses, of this Land Development Ordinance; or
>
> (3) The structure or use is permitted by the terms of a variance.
>
> [West Milford, N.J., Code § 470-44(c).]

The process by which zoning permits are granted is ministerial and unlike the discretionary endorsement of a request for a ROS under CREAMMA. The issuance of a zoning permit is a required ministerial act should the proposed location meet the ordained requirements based on the plain language of the Township code. "A ministerial duty is one that 'is absolutely certain and imperative, involving merely the execution of a set task, and when the law which imposes it prescribes and defines the time, mode and

occasion of its performance with such certainty that nothing remains for judgment or discretion.'" Vas v. Roberts, 418 N.J. Super. 509, 522 (App. Div. 2011) (quoting Ivy Hill Park Apartments v. N.J. Prop. Liab. Ins. Guar. Ass'n, 221 N.J. Super. 131, 140 (App. Div. 1987)).

We see no merit in plaintiff's argument that the ministerial act of issuing a zoning permit vested plaintiff with an enforceable right to a ROS for its cannabis business in the Township.  While a zoning permit is required before an applicant may "commence the construction, reconstruction, alteration, conversion or installation of a structure or building," there are no rights afforded to a recipient solely by being granted such a permit.  West Milford, N.J., Code § 470-44(a)(1).  See Harz v. Borough of Spring Lake, 234 N.J. 317, 321 (2018) (clarifying "a zoning officer must issue a zoning permit before a construction official can issue a permit" to begin construction but that the zoning permit alone does not give permission for construction to commence).

The record before the trial court establishes that plaintiff failed to show a likelihood of success on the merits by clear and convincing evidence as required under the second prong of Crowe.  Accordingly, we affirm the trial court's denial of plaintiff's OTSC.

VI.

25

We also affirm the dismissal of plaintiff's complaint against SoulFlora with prejudice since plaintiff concedes that SoulFlora has "not . . . d[one] anything wrong." The trial court granted SoulFlora's motion to dismiss with prejudice because "[p]laintiff does not plead any viable causes of action against SoulFlora, no additional facts could be plead that would give rise to a cause of action against SoulFlora, and further proceedings will only be a fishing expedition."

We review a trial court's decision to grant a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 4:6-2(e) de novo. Baskin v. P.C. Richard & Son, LLC, 246 N.J. 157, 171 (2021). When considering a Rule 4:6-2(e) motion, "[a] reviewing court must examine 'the legal sufficiency of the facts alleged on the face of the complaint,' giving the plaintiff the benefit of 'every reasonable inference of fact.'" Ibid. (quoting Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, PC, 237 N.J. 91, 107 (2019)).

In determining the adequacy of the pleadings to sustain the motion, the court must determine "whether a cause of action is 'suggested' by the facts." Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989) (quoting Velantzas v. Colgate-Palmolive Co., 109 N.J. 189, 192 (1988)); see also Wreden v. Twp. of Lafayette, 436 N.J. Super. 117, 124-25 (App. Div.

2014) ("in determining whether dismissal under Rule 4:6-2(e) is warranted, the court should not concern itself with plaintiffs' ability to prove their allegations").

"Dismissals under Rule 4:6-2(e) are ordinarily without prejudice." Mac Prop. Grp. LLC v. Selective Fire & Cas. Ins. Co., 473 N.J. Super. 1, 17 (App. Div. 2022). However, there are times when a dismissal with prejudice is mandated, such as when the facts are "palpably insufficient to support a claim upon which relief can be granted" and when "discovery will not give rise to" a successful claim. Ibid. (first quoting Rieder v. State, 221 N.J. Super. 547, 552 (App. Div. 1987); and then quoting Dimitrakopoulos, 237 N.J. at 107).

The only relief that plaintiff validly sought as to SoulFlora was an injunction. An injunction is a remedy rather than a cause of action. Rule 4:52-1; see Madej v. Maiden, 951 F.3d 364 (6th Cir. 2020); see also Aly v. Garcia, 333 N.J. Super. 195, 203 (App. Div. 2000) (differentiating when "a cause of action . . . gives rise to a claim of damages, as opposed to a claim for injunctive relief"). Plaintiff acknowledges no cause of action against SoulFlora was pleaded and that it is not a potentially culpable party. On this basis, we find that the complaint against SoulFlora was properly dismissed with prejudice.

VII.

27

Plaintiff further asserts that the trial court improperly dismissed the claims against the Township with prejudice both procedurally and substantively. Although the Township filed a letter with the trial court on notice to all parties advising it was joining SoulFlora's notice of cross-motion seeking similar relief without objection, plaintiff now argues that the trial court erred in considering dismissal of the claims against the Township with prejudice because the cross-motion was never amended or supplemented to include this relief.

SoulFlora and the Township argue that plaintiff has improperly raised this procedural argument for the first time on appeal. We consider arguments not raised to the trial court or otherwise preserved for appeal under the plain error standard, reversing only where the error was "clearly capable of producing an unjust result." R. 2:10-2. "The mere possibility of an unjust result is not enough." State v. Funderburg, 225 N.J. 66, 79 (2016).

"The minimum requirements of due process of law are notice and an opportunity to be heard." Klier v. Sordoni Skanska Constr. Co., 337 N.J. Super. 76, 84 (App. Div. 2001). "The opportunity to be heard contemplated by the concept of due process means an opportunity to be heard at a meaningful time and in a meaningful manner" with all parties having sufficient notice of the scope of motions pursuant to the Rules of Court. Ibid.

Even if this matter had been raised before the trial court, plaintiff has not established that allowing the Township to join the cross-motion by way of letter, rather than formal amendment of the cross-motion, created prejudice or an unfair result. The trial court heard substantive arguments from all parties on the matter, without objection from plaintiff. We conclude plaintiff has not met the plain error standard since there was no due process deprivation yielding an unjust result.

## VIII.

Although we reject plaintiff's newly minted argument that the trial court erred in dismissing the complaint because the Township did not properly join SoulFlora's motion, we nonetheless are compelled to note the trial court has not demonstrated sufficient foundation for a dismissal with prejudice because its written decision does not articulate a basis for relief granted to the Township.

It is incumbent on the trial court to state specific reasons when dismissing a complaint with prejudice. Hoffman v. Hampshire Labs, Inc., 405 N.J. Super. 105, 116 (App. Div. 2009); see also Klajman v. Fair Lawn Ests., 292 N.J. Super. 54, 61 (App. Div. 1996) ("The point is that a motion for dismissal with prejudice requires the trial court to make an informed decision based upon a full record, and express its reasons for that decision before the

case is dismissed.").  A trial court's failure to clearly state all conclusions of fact and law that support a dismissal with prejudice "constitutes a disservice to the litigants, the attorneys and the appellate court."  Curtis v. Finneran, 83 N.J. 563, 569-70 (1980).

A dismissal without prejudice allows a plaintiff to amend and refile a complaint that addresses and corrects prior deficiencies.  See Printing Mart-Morristown, 116 N.J. at 746.  Plaintiff argues that since it was deprived of this opportunity, the January 6, 2023 order dismissing the complaint with prejudice as to the Township must be vacated and remanded.  We lack the ability to consider the merits of plaintiff's argument without a statement of reasons from the trial court.

Therefore, the order dismissing all claims against Township with prejudice is hereby vacated and remanded with the limited instruction to the trial court to issue an amended order with a statement of reasons pursuant to Rule 1:7-4(a).  We offer no view on the outcome of the decision.

IX.

Finally, we consider plaintiff's contention that SoulFlora is an indispensable party and cannot be dismissed from this action until its final resolution.  "Whether a party is indispensable is fact sensitive."  Int'l Bhd. of Elec. Workers Loc. 400 v. Borough of Tinton Falls, 468 N.J. Super. 214, 225

(App. Div. 2021). "As a general proposition . . . a party is not truly indispensable unless he has an interest inevitably involved in the subject matter before the court and a judgment cannot justly be made between the litigants without either adjudging or necessarily affecting the absentee's interests." Toll Bros., Inc. v. Twp. of W. Windsor, 334 N.J. Super. 77, 90-91 (App. Div. 2000) (quoting Allen B. Du Mont Labs., Inc. v. Marcalus Mfg. Co., 30 N.J. 290, 298 (1959)).

Plaintiff contends SoulFlora is an indispensable party because "its rights were potentially impacted" by the outcome of the litigation. To the extent we have vacated and remanded plaintiff's claim against the Township to the trial court, SoulFlora shall remain in the case as an indispensable party for notice purposes only since there are no allegations of liability against it. See Kent Motor Cars, Inc. v. Reynolds & Reynolds, Co., 207 N.J. 428, 445 (2011) (determining that it is left to the discretion of the court to require "notice of the action be given to any non-party").

Affirmed in part; vacated in part; and remanded for limited proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION