**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2827-23

EUGENIA DEJESUS,

    Plaintiff-Respondent,

v.

ALI ABDI,

    Defendant-Appellant.

_____

> Submitted September 11, 2025 – Decided September 26, 2025
>
> Before Judges Marczyk and Puglisi.
>
> On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. DC-009871-23.
>
> Ali Abdi, appellant pro se.
>
> Law Offices of Perez and Bonomo, attorneys for respondent (Donald T. Bonomo, on the brief).

PER CURIAM

    Following a non-jury trial in this landlord-tenant dispute, defendant Ali

Abdi appeals from the April 22, 2024 order awarding plaintiff Eugenia DeJesus

$9,000 in damages and $10,400 in attorneys' fees and costs for the unlawful retention of her security deposit.  We affirm.

I.

In August 2022, plaintiff and three other tenants executed an eleven-month lease agreement with defendant.  Plaintiff paid a $5,925 security deposit, which was to be held in trust by defendant and returned to plaintiff upon the conclusion of the lease term, subject to deductions for any damages caused by the tenants.

At trial, plaintiff testified that when she moved in on September 1, 2022, the outside of the premises "was beautiful," but the doorbell and an exterior step were broken.  She further discovered the freezer had "a lot of holes" and a broken door, the dishwasher did not work, the floor between the kitchen and dining room had a large crack, the sink in the laundry room had "black" in it and was "extremely dirty and full of bacteria," the clothes washer was "full of" lint and dirt, and the air conditioning filter was "caked with dirt."

The next day, plaintiff contacted defendant's wife, Effat Emamian, the de facto property manager, via text message.  Plaintiff advised Emamian the residence was dirty and asked her to replace the laundry room sink.  Emamian told plaintiff a contractor would fix the freezer that evening and make other

2

repairs. Over the next few weeks, plaintiff texted Emamian "the freezer . . . [was] all broken, the door [was] stuck again" and the garage was a "mess." She sent Emamian photographs of the broken exterior step, dirty air filter, water damage and leaks, inoperable dishwasher, peeling paint, cracked ceiling, and mold. Plaintiff also testified the screen door was broken.

Plaintiff stated when she and the other tenants vacated the residence at the end of July 2023, they left it "extremely clean." Although Emamian told plaintiff she would return the security deposit, plaintiff did not receive any funds.

On August 25, 2023, plaintiff filed a complaint alleging defendant withheld the security deposit in violation of the lease agreement and sought $5,925 in damages. Three days later, defendant sent a letter to plaintiff and the other tenants, enclosing an itemized list of damages he claimed were caused by them. Although defendant stated his losses exceeded the security deposit, he enclosed a $1,000 check as an offer to plaintiff in exchange for her withdrawal of the complaint.

Defendant's subsequent answer and counterclaim alleged plaintiff provided him an incorrect address to which he mailed the damage letter and check, which was returned to him as undeliverable. Defendant further claimed

plaintiff and the other tenants breached several terms of the lease agreement and sought $3,750 in damages.

The matter was initially assigned to a different judge but was transferred in August 2023 because the judge had a conflict with plaintiff's counsel. Trial was scheduled for December 20, 2023 before Judge Nicholas Ostuni. On November 27, 2023, defendant advised he was attempting to retain an attorney and requested an adjournment because he was unable to take time off from work that week.

Trial was rescheduled to January 3, 2024, but was adjourned because defendant had a preplanned vacation. That same day, the judge's chambers emailed plaintiff's counsel and defendant, confirming the new trial date of February 9, 2024, and advising no further adjournments would be granted. The court also uploaded a notice to eCourts and mailed postcards to the parties, confirming the February 9, 2024 trial date.

On January 30, 2024, the judge's chambers again confirmed the trial date via email to plaintiff's counsel and defendant. The email reminded the parties the matter was an in-person trial and advised no adjournments would be granted for the "firm trial date."

A-2827-23

The day of trial, plaintiff appeared with her counsel and defendant appeared with Emamian.[1] Defendant was unprepared to begin trial and said he had to leave because he "h[ad] a class to teach." When he and Emamian repeatedly claimed they were unaware of the date until two days prior, the judge confirmed the chambers email and postcard notices were sent to the correct addresses for defendant, and defendant filed documents, including his prior adjournment request, on eCourts.

Although an attorney had not entered an appearance on behalf of defendant, he and Emamian claimed they retained an attorney named "Jason" who was unable to appear that day. The judge denied defendant's repeated adjournment requests, finding defendant lacked credibility, the issue of notice was "clear" and "unequivocal," and defendant had ample time to retain counsel.

Defendant also sought to add Emamian as a defendant because he "really was not involved at all" in the tenancy, and Emamian "took care of everything." The judge denied his request. Defendant then objected to the three other tenants not being present for trial. The judge noted the other tenants certified plaintiff paid the full security deposit and they waived any right to it. Thus, the judge

---

[1] Although defendant appeared self-represented and Emamian was neither his counsel nor a party, the judge permitted Emamian to address the court.

A-2827-23

found the other tenants were not required to be present for trial. After rejecting defendant's further protestations, the judge commenced trial.

Just as plaintiff's direct examination started, defendant abruptly left the courtroom to use the restroom, and the judge advised him the trial would proceed in his absence. Shortly thereafter, the judge asked the sheriff's officer to check on defendant. The sheriff's officer reported defendant felt "woozy" and was vomiting. The judge paused the trial, and the sheriff's officer called an ambulance.

Plaintiff's counsel objected to another adjournment, characterizing defendant's actions as "dramatics." The judge adjourned the trial over plaintiff's objection, noting:

> This court has heard some initial testimony. It has been recorded. I understand that your client has taken off of work. The court is going to take that into consideration because today's adjournment is going to be needed. I cannot sit here as a judge when my officers are telling me that . . . defendant . . . is in the bathroom vomiting. [Emamian] . . . is here trying to concentrate and obviously worried about [defendant]. I am not going to jump to the conclusion that there is any malingering when my officers have been able to verify that he's vomiting. Counsel fees, if proven, will take into consideration all of your efforts to prepare and come to court today and anything that you have done in the past, should you meet your burden and prove your case.

The judge expressed his concerns about defendant's tactics to have the trial adjourned, noting defendant "displayed no sign of illness whatsoever," and did not say he felt sick but rather claimed he had to leave to teach a class that afternoon. Nevertheless, the judge gave defendant "the benefit of the doubt" and again adjourned the trial.

Although they were afforded additional time to retain an attorney, defendant and Emamian appeared on the rescheduled date without counsel. Defendant stated they "did [their] best" to retain an attorney but did not do so. He then claimed the attorney initially said he was available for trial but later advised he was unable to appear because "something came up." Upon further questioning, defendant admitted he did not pay the attorney or sign a retainer agreement.

Defendant and Emamian reiterated their request she be treated as a defendant, which the judge again rejected because she was not a party to the lease. Emamian then claimed defendant had a medical condition that limited him from defending himself, but the judge denied her request to question him on direct examination or conduct cross-examination in his stead. The judge noted defendant communicated with the court "back and forth perfectly fine" during the prior appearance and that morning.

A-2827-23

Defendant and Emamian asked the judge to meet privately so defendant could disclose his medical condition, which he claimed prevented him from effectively cross-examining plaintiff. The judge agreed to do so and, after sealing the record and considering the request, permitted Emamian to "whisper questions . . . [to defendant] and have him ask the questions." The judge also permitted defendant to conduct direct examination by asking Emamian "one opening good question and have her testify to what she would like to present on behalf of him and them, . . . subject to the Rules of Evidence," and allowed Emamian "to present any documents that she want[ed] to rely on during the course of her testimony." Plaintiff's counsel did not object to this procedure.

Trial then recommenced. At the conclusion of plaintiff's direct testimony, the judge gave defendant additional time to review his questions before cross-examining plaintiff. Despite this courtesy, the judge halted cross-examination because defendant and Emamian were not "asking questions that [were] advancing the case" or eliciting testimony to establish plaintiff caused damage in the apartment, except for damage to a washing machine. When defendant's cross-examination questions continued along the same course, the judge stated he was going to "move on" because the questions were "not productive" and irrelevant to the claims. The judge noted he was "not gaining any insight into

A-2827-23

[plaintiff's] credibility" or "learning anything new about the testimony," so he ended cross-examination and advised defendant he had the option to recall plaintiff for his counterclaim. Plaintiff then rested.

Defendant called Emamian, who testified in "summary-like fashion." She said she "handled" the tenancy, and plaintiff contacted her about the house "on a daily basis." Defendant also presented a video documenting the apartment before plaintiff moved in. Although the video did not show the appliances in operation, Emamian stated defendant's realtor tested the appliances to verify they were functioning. Emamian also testified the house was cleaned prior to plaintiff's occupancy and showed photographs depicting fresh paint and clean rooms.

On March 22, 2024, defendant moved for a directed verdict, to dismiss the complaint for failure to state a claim, and to dismiss the complaint on procedural grounds, which plaintiff opposed. Although the non-conforming motions failed to "cite any authority, court rules or case law," in the interest of justice the judge considered and denied them on April 9, 2024.[2]

---

[2] At the conclusion of the day on February 21, 2024, the judge indicated trial was to resume the following day, which apparently did not occur. The record does not explain the adjournment to April 9.

The trial continued with plaintiff's cross-examination of Emamian. She testified she did not tell defendant about the alleged damages but complained to him that plaintiff was "really killing [her]" with all the complaints and she could not "handle [it] anymore." On redirect, Emamian played a video documenting damage to the refrigerator and dishwasher, outside garbage, and overgrown lawn and shrubs. During the redirect, the judge commented, "I just feel it should be noted for the record that when [defendant] says he cannot do this or he doesn't have the ability to do this or present the arguments, he is now whispering to [Emamian] what to say." After unsuccessfully attempting to re-argue issues addressed in his motions, defendant rested.

During his deliberation, the judge asked about the $1,000 check defendant claimed he mailed to plaintiff with his August 28, 2023 damages letter. Plaintiff stated she received the letter in December 2023 but not the check, and defendant was unsure and had no proof it was cashed.

There was no dispute the parties entered into a lease agreement and plaintiff paid a security deposit; therefore, the only issue before the court was whether defendant proved he incurred damage or loss justifying withholding any portion of the deposit. In his oral decision, the judge found that "right from the beginning," plaintiff contacted Emamian in writing to complain about the

10

inoperable and damaged appliances and other issues. The judge also noted "each and every item that [plaintiff] complained about within the first month of renting [the] house [were] . . . virtually the same things that [defendant claimed plaintiff] broke and damaged beyond normal wear and tear."

In support of his finding defendant lacked credibility, the judge recounted that defendant produced a receipt as proof he purchased a new refrigerator two months prior to plaintiff's occupancy; however, the model on the receipt was not the model in defendant's video. The judge also noted the video purporting to show a working dishwasher and air conditioning did not actually demonstrate either unit was operable. Photographs of the air conditioner showed a "tremendously dirty" air filter, which "clearly was not a new filter," and there was "no evidence" plaintiff damaged the unit. Likewise, the judge found no evidence to support defendant's claims plaintiff broke or damaged the clothes washer or sink, both of which appeared to be older units reaching the end of their viability.

The judge also rejected defendant's contention plaintiff caused damage to a first-floor ceiling by splashing water out of a second-floor tub, finding the photographs showed extensive water, mold, and ceiling damage inconsistent

with defendant's claims. He further determined defendant offered no proof plaintiff took or damaged a mirror.

While the judge determined defendant failed to prove most of his claimed damages, he found plaintiff responsible for replacement of a broken toilet seat, which he valued at $25. And although the parties disputed whether defendant provided a lawnmower and other garden tools, the lease nevertheless required plaintiff to maintain the landscaping. Citing photographs of garbage, uncut grass, and overgrown shrubs, the judge found defendant was entitled to $900 towards landscaping expenses.

In sum, the judge found defendant's evidence did not support his allegations "plaintiff broke or damaged the property beyond ordinary maintenance and repairs, other than . . . the toilet seat and the landscaping." Citing N.J.S.A. 46:8-21.1, the judge explained "[a] landlord may withhold money from a security deposit upon notice, but they do so at the risk of being challenged as to the amount of money that is withheld, because any money that is withheld that is not justified, . . . should be doubled."

Although the judge found defendant's claims largely unbelievable, he nevertheless accepted as true the testimony and documentation showing defendant sent plaintiff the $1,000 check in August 2023. Thus, even if plaintiff

did not receive or cash the check, the judge determined defendant did not wrongfully withhold that $1,000 of the security deposit. The judge then calculated plaintiff's damage award as $5,925 (security deposit) - $1,000 (previous offered payment) - $925 (plaintiff's liability) = $4,000, which was doubled to $8,000 pursuant to N.J.S.A. 46:8-21.1.

Prior to entering an order, the judge gave defendant the opportunity to provide proof plaintiff cashed the $1,000 check and, upon doing so, the award would be reduced by $1,000. Defendant did not provide proof the check was cashed, so the judge entered an order for $9,000 in damages. In addition, after reducing plaintiff's counsel's billable hours for court appearances, the judge awarded $10,400 in attorneys' fees and costs pursuant to N.J.S.A. 46:8-21.1.

Defendant raises a host of issues for our consideration on appeal, which we categorize for conciseness. First, defendant challenges procedural aspects of the trial, contending the judge erred by: denying his request for an adjournment of the trial to obtain counsel; continuing the trial despite defendant's medical condition; forcing defendant to disclose his medical condition; and considering testimony and making decisions in defendant's absence.

13

Defendant also claims error in the trial judge's pretrial decisions: accepting plaintiff's counsel's reasons for not serving defendant with court filings; dismissing three of the four defendants on the counterclaim without defendant's having received plaintiff's filings; and denying defendant's request to add Emamian as a defendant.

Defendant further challenges the judge's evidentiary rulings regarding a voicemail message and "documents for damages," claims the judge's findings of fact are not supported by credible evidence, and contends the judge erred by failing to decide several of defendant's counterclaimed damages and by awarding plaintiff attorneys' fees.

Defendant also raises several issues not raised before the trial judge. He claims: the transfer of the case from a prior judge to Judge Ostuni without notice severely prejudiced him; the firm trial date deterred him from retaining counsel, which severely prejudiced him; and the overall circumstances of the case evidence a lack of impartiality of the trial judge.

Before we address the substance of defendant's appeal, we are constrained to note the deficiencies that hinder our review. First, defendant failed to include in his appendix portions or, in some instances, the entirety of exhibits admitted into evidence during trial. An appellant is required to include in the appendix

"such other parts of the record . . . as are essential to the proper consideration of the issues, including such parts as the appellant should reasonably assume will be relied upon by the respondent in meeting the issues raised." R. 2:6-1(a)(1)(I). Defendant's failure to include the entire record hinders our ability to fully consider the points of error he raises.

In addition, parties to an appeal must support their arguments by citation to legal authority. See R. 2:6-9; see also Sackman v. N.J. Mfrs. Ins., 445 N.J. Super. 278, 297-99 (App. Div. 2016). Although defendant's table of authorities contains a list of cases, his merits brief fails to cite any legal authority to support his claims he was prejudiced, the judge erred, or both. Despite these deficiencies, we consider the merits of defendant's appeal.

## II.

We first address defendant's contentions regarding the judge's scheduling of the trial, which we review for an abuse of discretion. Kosmowski v. Atl. City Med. Ctr., 175 N.J. 568, 575 (2003). "[A] motion for an adjournment is addressed to the discretion of the court, and its denial will not lead to reversal unless it appears from the record that the defendant suffered manifest wrong or injury." Kornbleuth v. Westover, 241 N.J. 289, 300 (2020) (alteration in original) (quoting State v. Hayes, 205 N.J. 522, 537 (2011)).

15

Defendant's claim he was denied the opportunity to retain counsel is belied by the record. Plaintiff's complaint was filed on August 25, 2023, and defendant filed his answer and counterclaim on October 6, 2023. Trial was initially scheduled for December 20, 2023, but was adjourned twice, at defendant's request, to February 9, 2024. The record plainly shows defendant was sent multiple notices by various means, was granted reasonable adjournments, and his trial-day protestations were, as the judge found, not credible.

Defendant's argument he was "forced" to disclose a medical condition is also unsupported by the record. Of his own volition, defendant asked to speak privately with the judge who, after sealing the record and hearing defendant's reasons, modified the trial procedures.[3]

We are also unconvinced the judge erred in continuing plaintiff's direct examination for the brief time defendant was in the restroom. Defendant did not ask for a break and did not object to the testimony continuing in his absence, which spanned only five and half pages of transcript. The testimony adduced

---

[3] We note that defendant's answer and counterclaim utilized a preprinted form that states: "The Judiciary will provide reasonable accommodations to enable individuals with disabilities to access and participate in court events. Please contact the local ADA coordinator to request an accommodation. Contact information is available at njcourts.gov." It does not appear defendant availed himself of the opportunity to request an accommodation in advance of trial.

during his absence was foundational, wherein plaintiff established she signed the lease agreement, paid the deposit, and was seeking return of her money. None of these issues were in dispute and therefore, defendant cannot show he was prejudiced. Thus, we discern no abuse of discretion in the judge's scheduling and procedural handling of the trial.

## III.

We next address defendant's contention the court erred by denying his request to add Emamian as a defendant. Appellate courts "apply a plenary standard of review from a trial court's decision to grant a motion to dismiss" and "[owe] no deference to the trial court's conclusions." Gonzalez v. State Apportionment Comm'n, 428 N.J. Super. 333, 349 (App. Div. 2012) (quoting Rezem Fam. Assocs., LP v. Borough of Millstone, 423 N.J. Super. 103, 114 (App. Div. 2011)).

"Whether a party is indispensable is fact sensitive." Int'l Bhd. of Elec. Workers Loc. 400 v. Borough of Tinton Falls, 468 N.J. Super. 214, 225 (App. Div. 2021). A dismissal under Rule 4:6-2(f) for "failure to join a party without whom the action cannot proceed" is governed by Rule 4:28-1(a), which states:

> A person who is subject to service of process shall be joined as a party to the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an

17

interest in the subject of the action and is so situated that the disposition of the action in the person's absence may either (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or other inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. If the person should join as a plaintiff but refuses to do so, the person may be made a defendant.

In the context of Rule 4:28-1(a), indispensability "is usually determined from the point of view of the absent party and in consideration of whether or not [the absent party's] rights and interests will be adversely affected." Pressler & Verniero, Current N.J. Court Rules, cmt. 3.1 on R. 4:28-1 (2025). "[A] party is not truly indispensable unless [the absent party] has an interest inevitably involved in the subject matter before the court and a judgment cannot justly be made between the litigants without either adjudging or necessarily affecting the absentee's interests." Int'l Bhd. of Elec. Workers Loc. 400, 468 N.J. Super. at 225 (quoting Toll Bros., Inc. v. Twp. of W. Windsor, 334 N.J. Super. 77, 90-91 (App. Div. 2000)).

To establish a cause of action for breach of contract, the plaintiff must show: 1) the parties entered into a contract containing certain terms; 2) the plaintiff did what the contract required him to do; 3) the defendant did not do

18

what the contract required them to do; and 4) the defendant's breach, or failure to do what the contract required, caused a loss to the plaintiff. Globe Motor Co. v. Igdalev, 225 N.J. 469, 482 (2016) (quoting Model Jury Charges (Civil), § 4.10A "The Contract Claim-Generally" (May 1998)).

Here, plaintiff's complaint alleged defendant unlawfully retained her security deposit in violation of the terms of the lease agreement. As the trial judge noted, Emamian was not a signatory to the lease. She did not owe plaintiff a duty to perform under the agreement and could not be held liable for failure to return the security deposit. Although she may have acted as defendant's agent and had knowledge as a witness, she was not an indispensable party under Rule 4:28-1. We are therefore unpersuaded the trial judge erred by denying defendant's motion to dismiss.

## IV.

Lastly, we address defendant's challenge to the award of attorneys' fees. "Trial courts have considerable latitude in resolving fee applications, and a reviewing court will not set aside an award of attorneys' fees except 'on the rarest occasions, and then only because of a clear abuse of discretion.'" Grow Co. v. Chokshi, 424 N.J. Super. 357, 367 (App. Div. 2012) (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)). "Although the ordinary 'abuse of discretion'

19

standard defies precise definition, it arises when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. Immigr. & Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir. 1985)).

N.J.S.A. 46:8-21.1 permits a prevailing plaintiff to recover reasonable attorneys' fees in the court's discretion. Here, the judge determined plaintiff's counsel's hourly rate was reasonable, the trial lasted over two days, and counsel was required to respond to defendant's mid-trial motions. The judge thoroughly examined counsel's detailed certification and reduced the amount of hours billed for court appearances consistent with the actual time spent on the record, as documented on CourtSmart. We are therefore unpersuaded the award of attorneys' fees constituted an abuse of discretion.

V.

As to defendant's other points of error raised for the first time on appeal, we decline to consider an issue not properly presented to the trial court unless the jurisdiction of the court is implicated or the matter concerns an issue of great public importance. Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973). Neither circumstance is present in this matter.

A-2827-23

We are satisfied Judge Ostuni's factual findings are supported by the record, his credibility assessment warrants our deference, and his legal analysis comports with the governing legal principles. To the extent we have not expressly addressed any remaining issues raised by defendant, it is because they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division